# BALTIMORE CITY COURT.

Filed September 15, 1928.

## A. FREEBORN BROWN
## VS.
## MICHAEL FAHEY.

*Shirley Carter* and *Isaac Lobe Straus* for plaintiff.

*M. H. Fahey, S. A. Williams* and *Thomas H. Robinson* for defendant.

STEIN, J.—

This is an action to recover damages for breaches of a contract made on or about March 6th, 1923, by and between the plaintiff and the defendant. A demurrer, filed to the first declaration, was sustained; that declaration then amended, and its legal sufficiency challenged by a demurrer. In the argument in support of this demurrer, defendant's counsel contended that the matters set out in the amended declaration are too uncertain and indefinite to form a contract; to which the plaintiff's counsel reply: that the amended declaration is good, because the contract as set out contains that which make its terms certain and definite.

This amended declaration recites as forming the contract declared on, the following agreements between the plaintiff and defendant, viz:

That the plaintiff agreed with the defendant:

1. To cause to be formed a corporation under the laws of the State of Maryland, to be called the A. F. Brown Packing Corporation, with a fifty thousand dollar capital, divided into 500 shares of the par value of $100 each.

2. That, in payment for which shares, he, the plaintiff, would convey, assign and transfer to the corporation subject to the liens thereon, the following properties, viz:

A named farm; the personal property and a large cannery or canning plant thereon, and the "Swan Creek Brand," established since 1880.

3. That to give control of the corporation, the plaintiff would assign to the defendant four-sevenths, or 286 shares, of said five hundred shares of stock of the above corporation.

In consideration of which the defendant agreed with the plaintiff that:

A. The plaintiff would be made and remain president and one of the three directors of said corporation;

B. He, the defendant, would personally furnish to the corporation;

(1) The money necessary to remodel the said canning plant, by the installation therein of modern machinery for canning and packing corn, tomatoes, peas and beans;

(2) The money necessary for the packing and canning in such quantities and at such times as the business of said corporation and its orders for such packed and canned goods should require; so that it could market its product advantageously to the extent of said orders received by it in its said business, without the necessity of having to borrow money or to sell its goods at any time on a low market below cost and without a fair profit;

(3) To furnish whatever money should be necessary and *required* by it in the course of its said business to pay its outstanding obligations and to continue to do so until the corporation was in a financial condition to finance itself without borrowing.

C. That the corporation would employ a manager.

The terms set out in Sections one, two, three to be performed by the plaintiff are certain and definite.

Of those recited to be performed by the defendant:

Section A. Is definite; but whether lawful or not, is not decided here.

Section B. Its Sub-sections 1, 2 and 3 are uncertain and indefinite, because

(1) They do not set out the terms upon which the defendant is to furnish the money, i. e., whether as payment for his two hundred and eighty-six shares of stock, or as a gift, or as a loan; or if a loan, whether with or without security; or with or without interest; or when to be repaid: (2) each amount to be furnished is uncer-

tain. As measuring the amount of moneys to be advanced for their purposes and so making certain the amounts to be advanced, the declaration recites that, the capacity of the plant is the "packing of fifty thousand cases of canned goods per year"; and one hundred thousand dollars is the sum necessary to finance yearly a plant of such capacity; that forty thousand dollars is the cost of installing modern machinery in the plant. If these explanatory statements make certain and definite the sums the defendant agreed to furnish the corporation, they do not make certain and definite that clause of the contract, in which the defendant is averred to have agreed:

"To furnish the corporation whatever money should be necessary, and at such times as the business of said corporation and the orders for such pack and canned goods require, so that the company would be able to market its product advantageously to the full extent of the said orders received in its said business without the necessity of said corporation having to borrow money—or having to sell its goods at any time on a low market below cost and without a fair profit."

The sums to be furnished thereunder and the times when are uncertain; they would vary with the volume of business; with the management; with general business conditions; and with the very many other things ordinarily controlling the volume of crops harvested, their prices and their sales. What is a low market or fair profit is uncertain; not only is a matter of individual opinion, but varies as general economic conditions vary. A low market and a fair profit in a period of inflation, as in 1923, when this contract is said to have been formed, differs widely from a low market and a fair profit since the slowing down of business that began in and has continued since 1927.

The agreement to furnish money to pay outstanding obligations is indefinite; the amount to be furnished varies as the volume of business, the cost of labor and of materials vary; the corporate ability to pay varies with the collections, with the uses made thereof by the corporation; which can postpone the payment of its debts and use its money for any other legitimate purpose or need; among which are betterments, repairs, salaries and dividends.

Another want of certainty in the agreements undertaken by the defendant is the length of time these agreements to finance are to continue; the declaration says "until the company was in a financial condition to finance itself without borrowing"; do these words mean that the duty to finance continues during the life of the corporation, which under Art. 23, Sec. 9, Subsection 1, could be perpetual; or will the defendant's obligations under them end the very first time the corporation could or did finance itself without borrowing? If the obligation to advance moneys does not continue during the corporate life, how many separate times must he advance money; are the sums advanced to remain as if capital; if they or any part is lost during another year, must the defendant again advance a sum equal to that lost; if not, when do his obligations end? The need to borrow money and the sums to be borrowed vary with the amount of goods packed, and with the cost of labor and materials; if the directors determined to pack only 20,000 cases in one year, a much smaller sum would be needed than if 50,000 cases were to be packed.

These matters are neither certain nor definite, and the amended declaration does not recite anything agreed upon by the plaintiff and defendant that makes them certain or definite, so that the demurrer to the second amended declaration will be sustained, with thirty days' leave to amend.